# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JOHN ERIC ELROD,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:19-cv-00547-CLS** |
| | ) | |
| **ANDREW SAUL, Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, John Eric Elrod, commenced this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration, affirming the decision of the Administrative Law Judge ("ALJ") and, thereby, denying Mr. Elrod's claim for a period of disability, disability insurance, and supplemental security income benefits.[1]

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See, e.g., Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

---

[1] Doc. no. 1 (Complaint).

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts the following arguments:

I.     Whether the ALJ failed to fully and fairly develop the claim record by not scheduling Mr. Elrod for further intelligence testing[;]

II.    Whether the ALJ articulated an adequate explanation for concluding that Mr. Elrod did not meet the B criteria for listings 12.04, 12.05, 12.06 and 12.11[; and]

III.   Whether the ALJ's determination concerning the effect of Mr. Elrod's symptoms on his ability to perform work-related physical and mental activities is based on substantial evidence.

Doc. no. 15 (Brief in Support of Disability), at 1 (alterations supplied). Upon review of the record, the court concludes that the first two contentions have sufficient merit to warrant reversal and remand.

The resolution of claimant's second contention is determinative for the resolution of his first. Therefore, it will be discussed first.

Claimant contends that the ALJ failed to articulate an adequate explanation for concluding that he did not meet the B Criteria for Listings 12.04 (Depressive, bipolar and related disorders), 12.05 (Intellectual disorder), 12.06 (Anxiety and obsessive-

compulsive disorders), and 12.11 (Neurodevelopmental disorders).[2]  The B Criteria

for each of these Listings requires, in part,

> [e]xtreme limitation of one, or marked limitation of two, of the
> following areas of mental functioning (see 12.00F):
>
> 1.  Understand, remember, or apply information (see 12.00E1).
>
> 2.  Interact with others (see 12.00E2).
>
> 3.  Concentrate, persist, or maintain pace (see 12.00E3).
>
> 4.  Adapt or manage oneself (see 12.00E4).

20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04B, 12.05B, 12.06B, 12.11B.  The ALJ

found that claimant had no more than moderate limitations in each of these areas of

mental functioning.[3]  A moderate limitation is found where a claimant's "functioning

in this area independently, appropriately, effectively, and on a sustained basis is fair."

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F2c.

The first paragraph B criterion, "Understand, remember or apply information,"

> refers to the abilities to learn, recall, and use information to perform
> work activities.  Examples include: understanding and learning terms,
> instructions, procedures; following one- or two-step oral instructions to
> carry out a task; describing work activity to someone else; asking and
> answering questions and providing explanations; recognizing a mistake
> and correcting it; identifying and solving problems; sequencing multi-

---

[2] Doc. no. 15 (Brief in Support of Disability), at 20-26.

[3] *See* doc. no. 8-3 (Administrative Record), at 46.

3

step activities; and using reason and judgment to make work-related decisions.

20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00E1. The ALJ found that claimant had only

a moderate limitation in this area, stating:

> Although the claimant has a history of special education classes and a diagnosis of borderline intellectual functioning, the undersigned agrees with the assessment of Dr. Estock that the claimant can handle simple instructions and tasks. This is consistent with his semi-skilled work history in multiple jobs. The claimant drives, attends scheduled appointments and perform[s] volunteer work.

Doc. no. 8-3 (Administrative Record), at 46 (ALJ Decision) (alteration supplied).

Claimant first argues this explanation was inadequate because the ALJ evaluated claimant's activities, rather than his ability to learn, recall, and use information.[4] *See Williams v. Commissioner of Social Security*, No. 18-CV-11202, 2019 WL 265382, at *4 (E.D. Mich. Jan. 18, 2019) ("There is a 'disconnect' between the areas of inquiry required by § 12.00E1 . . . and the ALJ's findings about certain of plaintiff's activities and her limited ability to communicate non-work-related information."). Next, claimant argues that the ALJ did not consider the opinion of consulting psychologist, John R. Haney, Ph.D., that claimant's "[r]ecent and remote memory appeared impaired." Doc. no. 8-21 (Administrative Record), at 1287 (Haney

---

[4] Doc. no. 15 (Brief in Support of Disability), at 22.

Report).[5] Nor did the ALJ consider the numerous findings that claimant's insight and judgment were impaired.[6]

Claimant next contends that the ALJ failed to adequately explain her reasons for finding claimant moderately limited in the third B criterion, "Concentrate, persist, or maintain pace."[7] This functional area

> refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number of length of rest periods during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E3. The ALJ found that claimant was moderately limited in this area, stating:

> The record shows that he watches television, and a consultative examination revealed that he was alert and oriented in all spheres and able to perform simple calculations. After a five-minute delay, he was able to recall two of three objects (Exhibit B3F). The claimant drives, attends scheduled appointments and performs volunteer work. The testimony at the hearing indicated additional work activities, which were

---

[5] The facts that likely led to Dr. Haney's finding were that claimant reported the date as February 11, 2014 when the date was in fact March 10, 2014, and claimant's "[r]ecall for both yesterday's events and more remote things like early employment and educational history was poor." Doc. no. 8-21 (Administrative Record), at 1287.

[6] *See* doc. no. 15 (Brief in Support of Disability), at 23-24 (collecting citations to medical records).

[7] *See id.* at 24.

not reported elsewhere or previously.  Thus leading the undersigned to conclude the claimant has no more than moderate functional limitations in this area.

Doc. no. 8-3 (Administrative Record), at 46 (ALJ Decision).

Claimant argues that the ALJ inappropriately relied on a psychological evaluation of claimant from 2011, long before the onset date of April 1, 2014, when there was a more contemporaneous psychological evaluation that showed different results.[8]  The more recent evaluation, performed by Dr. Haney, found that claimant

was unable to subtract serial sevens or count forward by threes.  The claimant also had difficulty performing most simple problems in change making and arithmetic.  He had difficulty finding any abstract similarities between paired objects and interpreting simple proverbs.  He gave little accurate general information and recalled two digits forward, two backward and zero of three objects after five minutes.  . . . Intelligence was estimated at the low borderline to mild mental retardation range.

Doc. no. 8-21 (Administrative Record), at 1287 (Haney Report).  Claimant also notes that the ALJ relied continuously on claimant's ability to attend scheduled appointments, but does not consider that his wife drove him to and attended the majority of these appointments with him, and reported his symptoms for him.[9]

_____

[8] *See id.* at 25 (comparing the evaluation performed by Mary Arnold, Psy.D., (Tr. 704) on September 29, 2011 to the evaluated performed by Dr. Haney on March 10, 2014 (Tr. 1287)).

[9] *See* doc. no. 8-21 (Administrative Record), at 1283 ("He is accompanied by his wife who provides all the history.  The patient contributes very little."); *id.* at 1290 ("His wife spoke for him throughout the session."); doc. no. 8-27 (Administrative Record), at 1735 ("Wife drove him to the hospital."); *id.* at 1742; doc. no. 8-28 (Administrative Record), at 1803; *id.* at 1807; *id.* at 1809; doc. no. 8-29 (Administrative Record), at 1953 ("[Client] presents for it at MHC with his wife, Karen.

6

The ALJ also cited previously unreported work activities as evidence claimant had only a moderate limitation.  Claimant's wife testified that, after claimant was released from his back brace, he tried to go back to work cleaning cars, but he stopped after two attempts when he realized that he could no longer perform the work due to his back problems.[10]  Claimant's wife also testified that claimant volunteers sweeping the floors at a boat repair shop once or twice a week for two hours at a time.[11]  Claimant argues that these short intervals of volunteer work are not the same as maintaining full-time employment.  *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability . . . ."); *Wisner v. Astrue*, 496 F. Supp. 2d 1299, 1304 (N.D. Ala. 2007) ("The ability to occasionally assist his grandmother in collecting eggs, described by the ALJ as 'work activities,' is not the equivalent of sustaining full-time employment."); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) ("It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.").

---

. . .  [Client] states he is overall doing well, but his wife disagrees reporting he is snappy, irritable, and yells often for no reason.  [Client] agreed with his wife."); *id.* at 1962 ("Client presents to visit with wife."); *id.* at 1965 (same).

[10] *See* doc. no. 8-4 (Administrative Record), at 99-101.

[11] *See id.* at 101.

Finally, claimant argues that the ALJ inappropriately rejected that portion of the opinion of Robert Estock, M.D., on which she otherwise relies, that states claimant would likely miss one or two days per month due to his psychological symptoms as "speculative and inconsistent with the totality of the evidence of the record."[12]  Doc. no. 8-3 (Administrative Record), at 51 (ALJ Decision).

The Commissioner's response to claimant's arguments is simply that the ALJ made appropriate notations to evidence in the record and appropriately relied on Dr. Estock's opinion that claimant had no more than moderate limitations in any of the relevant functional areas.[13]

Additionally, the ALJ gives limited weight to each medical opinion presented to her as evidence of claimant's disabilities, often premised on claimant's lack of veracity at the hearing held in January of 2018.[14]  The ALJ does not appear to consider, however, that claimant possibly was not untruthful, but rather struggling to communicate appropriately due to his intellectual disability.

Upon review, the court finds it is unclear upon which medical evidence in the record the ALJ relied, and that there is a disconnect between the requirements for these two B criteria and the ALJ's explanations.  Therefore, the court finds that the

_____

[12] Doc. no. 8-5 (Administrative Record), at 214.

[13] *See* doc. no. 16 (Brief in Support of Commissioner), at 10.

[14] *See* doc. no. 8-3 (Administrative Record), at 51.

ALJ failed to adequately explain why claimant did not meet the B criteria for Listings 12.04, 12.05, 12.06, and 12.11.

The court now evaluates claimant's first contention: that is, the ALJ failed to fully and fairly develop the record by not ordering further intelligence testing. The Eleventh Circuit has held that an ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen*, 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart*, 153 F. App'x 597, 598 (11th Cir. 2005). Claimant, however, bears the ultimate burden of producing evidence to support his disability claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a),(c)). Claimant was represented by counsel throughout the administrative process, and his attorney at that time did not request that the ALJ order a consultative examination to perform intelligence testing.[15]

Listing 12.05 is an Intellectual Disorder. The B criteria for Listing 12.05 are

---

[15] *See* doc. no. 15 (Brief in Support of Disability), at 18.

B.    Satisfied by 1, 2, and 3 (see 12.00H):

    1.    Significantly subaverage general intellectual functioning evidenced by a or b:

        a.    A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

        b.    A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

    2.    Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

        a.    Understand, remember, or apply information (see 12.00E1); or

        b.    Interact with others (see 12.00E2); or

        c.    Concentrate, persist, or maintain pace (see 12.00E3); or

        d.    Adapt or manage onself (see 12.00E4); and

    3.    The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of

10

age 22.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B.  As discussed above, the ALJ found, in accordance with Dr. Estock's opinion, that (a) claimant had moderate limitations in his ability to understand, remember, and apply information; interact with others; and concentrate, persist, or maintain pace; as well as (b) a mild limitation in his ability to adapt or manage himself.[16]  Such findings would not necessitate further inquiry into claimant's IQ because the Listing requires both 12.05B1 *and* 12.05B2 to be met.  The ALJ noted, however, that the requirements of 12.05B were not met, "because the record does not show evidence of IQ scores in the stated range."[17]

Claimant stated that he was enrolled in separate special education classes for the entire time he was in school, and that he did not receive a diploma, but only a certificate of attendance.[18]  Additionally, he is illiterate.[19]  When claimant filed his initial claim for disability, he alleged, among other things, that he was "slow in the head, if tested."[20]  Aside from that indication that intelligence testing might be

---

[16] *See* doc. no. 8-3 (Administrative Record), at 46 (ALJ Decision).

[17] *See id.* at 48.

[18] *See id.* at 49.  School records were unavailable due to claimant's age.  *See* doc. no. 8-4 (Administrative Record), at 153 (claimant's attorney stating during a hearing on December 3, 2014, "I have asked the staff to try to get his school records.  Of course, at his age, I seriously doubt we're going to be able to [obtain copies of his records], but we're going to try.") (alteration supplied); *see also id.* at 127 (claimant's attorney stating during a hearing on January 25, 2016, "We do not have any education records, school records.").

[19] *See* doc. no. 8-3 (Administrative Record), at 53 (ALJ Decision).

[20] Doc. no. 8-5 (Administrative Record), at 200-01 (Disability Determination).

necessary, claimant's attorney made no official requests for intelligence testing, and no steps were taken to administer an IQ test.[21]  Each consultative physician or psychologist noted, however, claimant had borderline intellectual functioning without any formal intellectual testing.[22]  In order to fully evaluate on remand whether claimant meets or medically equals Listing 12.05, intelligence testing must be performed.

Based on the foregoing, the decision of the Commissioner is reversed, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk is directed to close this file.

**DONE** and **ORDERED** this 29th day of July, 2020.

_____
Senior United States District Judge

---

[21] *See* doc. no. 15 (Brief in Support of Disability), at 18.

[22] *See* doc. no. 8-12 (Administrative Record), at 705 (Arnold Report) ("W/O benefit of testing, Mr. Elrod's FSIQ is estimated to be borderline range; he has basic skills to manage funds. No school records are provided for review."); doc. no. 8-21 (Administrative Record), at 1284 (Gill Report) ("The patient is a poor historian and seems to have little knowledge of his history and poor understanding of his problem.  He clearly has some limited cognitive abilities."); *id.* at 1287 (Haney Report) ("Intelligence was estimated at the low borderline to mild mental retardation range.").

12